JOHN NEYLON *vs.* ANNIE L. PHILLIPS & another.

Suffolk.　March 7, 1901. — June 18, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Negligence,* In driving, Contributory negligence and due care.

It is no evidence of negligence on the part of the driver of a coal team, backing it towards a pile of coal and knowing the plaintiff to be behind the wagon, that as the team approached the pile of coal the horses backed more quickly and that, from some unexplained cause, the wagon swerved and caught the plaintiff between it and a post and injured him. Horses backing as these were cannot be expected to move at the same rate of speed all the time.

A coal shoveller, about to unload a team which is backing towards a pile of coal, who places himself behind the wagon and walks backwards with his hands on the doors at the end of the wagon, and in so doing is caught between the wagon and a post which he knew was there and could have seen by looking around, has voluntarily assumed the risk of injuries so caused and is not in the exercise of due care.

TORT by a coal trimmer and shoveller in the employ of the Chelsea Gas Light Company to recover for injuries caused by the alleged negligence of a servant of the defendants who were engaged in carting coal for that company from a wharf to its shed. Writ dated October 29, 1898.

At the trial in the Superior Court, before *Sherman,* J., upon the evidence for the plaintiff which is described in the opinion of the court, the judge directed a verdict for the defendants; and the plaintiff alleged exceptions.

*E. N. Hill,* for the plaintiff.

*S. R. Spring,* for the defendants.

MORTON, J. This is an action of tort to recover for personal injuries caused by the alleged negligence of the defendants' servant. The court directed a verdict for the defendants and the case is here on the plaintiff's exceptions. The plaintiff was in the employ of the Chelsea Gas Light Company as a coal trimmer and shoveller. At the time of the accident the defendants were engaged in carting coal for the Gas Light Company from a wharf to its shed. The plaintiff's work consisted in helping to unload the wagons and in shovelling the coal on to the heaps in the shed. There were rows of posts in the shed about fifteen

feet apart, the spaces between which were called " bays." The wagons were six to seven feet in width from hub to hub and carried about four and one half tons each. The tops of the tail-boards were about six feet from the ground. There were doors in the rear end of the wagons which were opened to let out the coal. The drivers would drive into the shed and turn round and back down one of the bays to the coal heap. As they backed down one of the men would step in behind the wagon and walk backwards towards the coal heap so as to be ready to open the doors and let out the coal when the wagon got far enough. They did this so as to save themselves the trouble of shovelling the coal off the floor. On the day of the accident one Tenny a driver for the defendants came to the shed, and drove in, and turned round and began to back down the first " bay." When he got within ten or fifteen feet of the coal pile the plaintiff stepped in behind the wagon and began to open the doors. He kept his hands on them so as to prevent them from opening and letting out the coal and in that position walked backwards towards the coal heap as the wagon continued to back. Shortly before it reached the coal heap the wagon began to back quickly and swerved to the right and caught the plaintiff between it and one of the posts and caused the injuries complained of. The plaintiff could not see the driver and the latter could not see the plaintiff although there was evidence tending to show that he knew that the plaintiff was behind the wagon. The plaintiff could have seen the post by turning his head but he did not, having his attention engrossed as he testified by watching the team and the backing. There was no evidence as to what caused the wagon to swerve.

We think it plain that a verdict was rightly ordered for the defendants, and that it can be sustained either on the ground that the plaintiff was not himself in the exercise of due care or that there was no evidence of negligence on the part of the driver. There is no evidence as to what caused the wagon to swerve. For aught that appears the driver was a competent driver and the horses were safe and steady horses. There is nothing to show that the wagon was out of repair, or that it was an improper vehicle for use in that business and place. The cause of the swerving is entirely a matter of conjecture, as is

also the cause, if that is material, of the quicker backing as the wagon approached the pile of coal. Naturally horses backing as these were could not be expected to move at the same rate of speed all the time, and it is no evidence of negligence on the part of the driver that as the horses approached the pile of coal they backed more quickly, and that, from some unexplained cause, the wagon swerved and struck the post. Something more must appear than has been shown to make out negligence on the part of the driver. Further, it seems to us that the plaintiff was not himself in the exercise of due care. He voluntarily and for his own convenience placed himself behind the wagon and walked backwards with his hands on the doors. The position was one of risk and he voluntarily assumed it. He knew that the driver could not see him, and that his attention was engrossed by his team and the difficulty of backing down between the posts. He knew that the posts were there but he did not look around though he would have seen the post if he had done so. It might well be held, we think, that, under such circumstances, he was not in the exercise of due care. *Casey* v. *Malden*, 163 Mass. 507.

*Exceptions overruled.*